## Napier v. Witt.
## Begley v. Holliday.

Oct. 23, 1945.

B. P. Wootton and John B. Eversole for appellants.

W. E. Faulkner and D. G. Boleyn for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

Appellant C. W. Napier, and appellee, Taylor Witt, were opposing Republican candidates for County Judge of Perry County at the Primary Election held on the fourth day of August, 1945. Appellant, Justus Begley, and appellee, Green Holliday, were opposing Republican candidates for Sheriff of the County at the same Primary Election. On recount of the ballots, Mr. Witt received a plurality of 34 votes, and Mr. Holliday received a plurality of 511 votes. These contests were filed; and, since the evidence in the two cases was the same in respect to the charge of violation of the Corrupt Practices Act, the cases were consolidated for trial, and have been consolidated on appeal to this Court. Many hundreds of pages of typewritten testimony are contained in the record. To discuss the evidence fully would delay the rendition of this opinion beyond the time for placing

the names of the successful candidates on the ballot to be voted in the General Election to be held November 6, 1945; therefore, we will particularize only in respect to the points most nearly supporting appellants' contentions.

Both appellants allege that the appellees opposing them violated the Corrupt Practices Act on the day of the Primary Election, and for several days prior thereto. There was evidence that some of the workers for appellees used money and whiskey on the day of the Primary Election to secure votes for their favored candidates; but the Chancellor found that neither of the appellees participated in these practices, nor was any illegal act done by any person acting in their behalf, with their knowledge, direction, consent, or acquiescence. The record raises no more than a doubt in our minds as to the correctness of the Chancellor's decision in this respect; that being true, it will not be disturbed. Holley v. Burke, 300 Ky. 571, 189 S. W. 2d 862.

The evidence shows that in some of the precincts, the names of both appellees were on the "slates" of certain workers; but there is no evidence to show that either of the appellees combined with the other, or, acting singly, committed any act in an endeavor to corrupt the election, or to secure votes illegally. Appellee Holliday testified that he gave a Mr. Burns $3, or $3.50, as his part of a contribution to a fund which was being raised to purchase Mr. Burns a wheel chair. This happened a few days before the election; but it was shown conclusively that Mr. Burns was unable, because of physical infirmities, to go to the polls; he actually did not vote; and he was registered as a Democrat in his precinct, for which reasons he could not have voted for Mr. Holliday, had he been able to get to the polls.

The charge that the Kentucky River Coal Corporation participated in the election, in violation of KRS 123.010, is not sustained by the evidence; although it is shown that Marsh Hibbard, part-time employee of the Corporation, was active in behalf of both Witt and Holliday in his individual capacity.

One witness testified that he saw Mr. Witt hand a woman something that looked like money. He named the woman, but later changed his testimony and named

a second woman as the one who received the so-called money. We would be impressed with the contention that this was a circumstance which might be considered as showing a violation of the Corrupt Practices Act by Mr. Witt, were it not for the fact that the evidence conclusively shows this witness to be a mental incompetent. His evidence should have been stricken from the record after this fact was shown so conclusively. Another witness testified that he saw Mr. Witt give money to an unnamed man on the day of the election. Mr. Witt testified that this happened; but explained, and was corroborated by other witnesses, that this money was openly paid to a worker to secure his services in hauling voters to the polls. Such use of money is not prohibited by the Corrupt Practices Act.

There remains for our consideration the contention that Mr. Witt received illegal votes in excess of his plurality over Mr. Napier. Evidence was introduced in respect to the votes cast by 63 persons named in the petition. Most of this number voted openly on the table in the presence of the election officers, without having been sworn as to their physical infirmities. Of this number, the evidence supports the Chancellor's finding that the four following persons voted for Mr. Napier: Tom Thorp, Jim Noble, Shade Baker, and Martha Pop. This increases Mr. Witt's majority to 38. The evidence supports the Chancellor's finding that the nine following voters illegally cast their ballots for Mr. Witt: Felix Herald, Shade Herald, John T. Herald, Jim Gibson, Noah Couch, Sallie Whitaker, Susan White, Sallie Hurt, and Nancy Gibson. This decreases Mr. Witt's majority to 29, and leaves remaining 50 challenged voters. Of this number the evidence supports the Chancellor's finding that three names appeared on the list twice, thus leaving 47 challenged voters. Of these, the evidence supports the Chancellor's finding that the seven following persons cast secret ballots in the voting booths: Eliza Williams, Bill Couch, Reba Campbell, Boyd Wooton, George Ambrose, Sherman Wooton, and Eva Herald. This leaves 40 on the list of challenged voters. Of this number, the evidence supports the Chancellor's finding that the ten following persons cast their votes for Billie Baker, a third candidate for the Republican nomination for County Judge: Lillie Belle Fugate, Lula Baker, Johnnie Baker, Bige Baker, Elizabeth White, Sarah Couch, El-

len Campbell, Sophia Baker, Mary Begley, and Lucy Begley. This reduces the number of challenged voters to 30

The. evidence supports the Chancellor's finding that Bessie Couch Napier, one of the persons named in the petition, did not vote in the precinct in which it was alleged she illegally cast her vote. This reduces the number of challenged voters to 29. The evidence failed to disclose for whom Dan Baker and Charity Herald cast their ballots. This reduces the number of voters challenged to 27; and, since appellee Witt's plurality over Napier, exclusive of consideration of these 27 votes, remains at 29, it is unnecessary for us to comment further on the Chancellor's findings, because the decision in respect to the legality of these votes would not change the result of the election.

In considering the record on this appeal, we have followed the rule announced in Holley v. Burke, supra, viz.: "We are always slow to override the findings of the trial judge, and never do so unless we are of the conclusion that the evidence preponderates against his findings, resolving any doubt as to correctness in the court's favor."

The judgment in each case is affirmed.